Tom, J.P.,
dissents in a memorandum as follows: Plaintiff al *530 leges that she sustained injury to her back on December 5, 2001 while operating a New York City Transit Authority bus along Atlantic Avenue in Brooklyn. According to her trial testimony, as she approached the intersection with Nevins Street, traveling at five to seven miles an hour, she was forced to veer to the right by a car that suddenly pulled out in front of her. As a result, the left front tire of the vehicle struck a round construction hole perhaps two feet wide and 12 to 18 inches deep that was situated next to a manhole cover. Plaintiff had observed the hole regularly for over a month and previously avoided it by driving over it between the front wheels of the bus. The action proceeded to trial against HHM, which performed the road work along Atlantic Avenue under contract with the City of New York.
HHM’s president testified that the company had resurfaced the area with temporary pavement on October 1, 2001, returning to connect a small pipe to a manhole on October 25, after which the excavation was backfilled and the road restored with temporary asphalt. Operations were suspended due to the holiday season, and no other work was performed until January 2002.
After the jury returned a verdict in plaintiffs favor, the parties submitted posttrial motions. The court granted plaintiffs motion to modify damages to the extent of adding an award of $22,000 for past medical expenses, bringing the total amount awarded to $1,697,174. The court denied HHM’s motion to set aside the verdict, which asserted (1) that HHM owed plaintiff no duty of care, (2) that the awards for future lost earnings and medical expenses were speculative, and (3) that such awards were against the weight of the evidence. The trial court expressly noted that it had twice rejected HHM’s position, advanced in motions interposed before and during trial, that it should not be held liable because maintenance of the streets is a nondelegable duty of the City.
On appeal, HHM contends that the trial court erred in denying its motion. Its primary contention is that the contractual duty it assumed for the City of New York does not extend to a third party, such as plaintiff, who was not an intended beneficiary of the contractual undertaking, and that the court erred in failing to instruct the jury to apportion fault as against the City. HHM contends that its acts, performed as a city contractor engaged to make street repairs, must be imputed to the municipality and maintains that its activities did not create any hazardous condition for which liability might be assigned. HHM further argues that the jury finding of permanent disability is *531 not supported by sufficient evidence and that the jury’s determination of this question, as well as liability and causation in general, are against the weight of the evidence. Finally, HHM claims to have been prejudiced by plaintiff’s summation, in which counsel was permitted to read from HHM’s contract with the City.
HHM is correct that, as a general principle, a duty undertaken as a contractual obligation does not extend to third parties (see Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d 220, 226 [1990]). However, the law recognizes situations in which a duty of care is imposed on a party to a contract to provide services, which include, as pertinent here, where that party has “launche[d] a force or instrument of harm” (Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002], quoting Moch Co. v Rensselaer Water Co., 247 NY 160, 168 [1928]) by creating or exacerbating a dangerous condition (Espinal, 98 NY2d at 141-142).
The resolution of disputed facts is within the province of the jury, as is causation generally (Windiseh v Weiman, 161 AD2d 433, 437 [1st Dept 1990], citing Kallenberg v Beth Israel Hasp., 45 AD2d 177, 180 [1st Dept 1974], affd 37 NY2d 719 [1975], and O’Connell v Albany Med. Ctr. Hosp., 101 AD2d 637, 638 [3d Dept 1984]). On this record, the jury was at liberty to credit plaintiff’s testimony that there was a substantial hole in the road surface, a dangerous condition, created by HHM in the course of its work on the sewer mains approximately six weeks before the accident, which defect was readily observable to plaintiff.
It is suggested that the complaint should be dismissed as against HHM bécause the City of New York, as the party charged with a nondelegable duty to maintain the streets in a safe condition, is wholly liable for the defect that caused plaintiff’s injury. If this were the case, the City or any other party under a nondelegable duty would be unable to limit its liability in accordance with its relative culpability (CPLR 1601), a proposition which the Court of Appeals has rejected. In Rangolan v County of Nassau (96 NY2d 42 [2001]), the county was sued by a plaintiff who, while incarcerated, sustained injury in an assault by a fellow inmate. The trial court denied the county’s request for an instruction as to apportionment against the assailant, concluding that CPLR 1602 (2) (iv) renders apportionment unavailable where liability arises due to the breach of a nondelegable duty (id. at 45). The Court of Appeals disagreed, noting that it would be anomalous to read that provision of the CPLR as an exception to the availability of apportion *532 ment to “municipalities, landowners and employers, who often owe a non-delegable duty or are vicariously liable for their agents’ actions[,] [as] these are precisely the entities that article 16 was designed to protect” (Rangolan, 96 NY2d at 48).
It is further proposed that HHM must be permitted to seek apportionment against the City under CPLR 1601 on the basis of the municipality’s nondelegable duty to maintain the roadway. HHM assigns error to the trial court’s refusal to instruct the jury that it must determine the extent of the City’s liability as a nonparty tortfeasor, arguing that a new trial is required to assess the City’s relative culpability.
While it has been remarked that CPLR article 16 eludes expeditious interpretation (see Chianese v Meier, 98 NY2d 270, 275 [2002]), the statutory language clearly indicates that the legislature did not intend apportionment to be predicated on obligations that are vicarious or nondelegable. Article 16, in limiting the defendant’s liability for the plaintiffs noneconomic loss to the defendant’s equitable share, provides that the defendant’s share shall be “determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss” (CPLR 1601 [1] [emphasis added]). Culpability denotes guilt or blameworthiness, not simply liability incurred irrespective of causation. The language utilized indicates the intent to subject to apportionment those parties that are responsible for actually causing harm. Because HHM does not attempt to establish the City’s culpable conduct in causing or contributing to the injury sustained by plaintiff but relies solely on the municipality’s nondelegable duty to maintain the streets, HHM has not demonstrated that it is entitled to seek apportionment against the City under CPLR 1601. The majority’s position is flawed in that it cites to legal principles that have no application to this case. The majority states that “a municipality . . . remains vicariously liable for the contractor’s negligence” (emphasis omitted). This may be true, but the issue of vicarious liability was never raised in this case. Plaintiff is not seeking to recover damages against the City based on the municipality’s vicarious liability as a result of its contractor’s negligence (see Faragiano v Town of Concord, 96 NY2d 776, 778 [2001]). Thus, the issue of vicarious liability is irrelevant. The majority also states that “HHM ... is not responsible to third parties for the tortious acts of its principal.” Once again, this may be a correct legal principle, however, in the present case the City committed no tortious act. The trial record is devoid of evidence of any negligence on the City’s part. Thus, the jury would be asked to speculate on an issue without any supporting proof.
*533 Furthermore, while the contractor is subject to liability to plaintiff for its negligence without condition, the City is only exposed to liability to plaintiff if the notice provisions of the Pothole Law (Administrative Code of City of NY § 7-201 [c] [2]) have been complied with. In denying HHM’s request for an instruction as to assessment of liability against nonparty City, the trial court noted that there was “no evidence that there was any notice to the City” (which may well explain why the complaint does not name the City as a defendant). HHM did not contest the court’s assessment or address the notice issue, interposing only a general objection to the court’s refusal to issue a supplemental instruction concerning the City’s nondelegable duty to the public at large to maintain the streets in a safe condition.* This instruction concerns the City’s common-law duty of care to plaintiff, not its alleged obligation to apportion damages with HHM. Because it omits the prior notice requirement as a condition of recovery, the trial court did not err in refusing to include it in its jury charge. Furthermore, HHM never requested a jury charge of apportionment of fault as against the City in either its initial or supplemental charge request. HHM’s exception to the charge concerns only the court’s failure to give a charge concerning the City’s nondelegable duty to maintain its roads and not the court’s failure to provide a charge on apportionment of fault. Thus, HHM has not preserved its present claim that the failure to instruct the jury concerning apportionment constitutes error (De Long v County of Erie, 60 NY2d 296, 306 [1983]; Derdiarian v Felix Contr. Corp., 51 NY2d 308, 317 [1980]).
Finally, it is settled that the City cannot be held liable for a defect in the street on a theory of constructive notice (Amabile v City of Buffalo, 93 NY2d 471, 475-476 [1999] [“constructive notice of a defect may not override the statutory requirement of prior written notice of a sidewalk defect”]). The Pothole Law requires prior written notice of a defective condition as a prerequisite to bringing suit, and the burden rests on the plaintiff to plead and prove that such written notice had been received prior to injury (see Poirier v City of Schenectady, 85 NY2d 310, 314 [1995]; Laing v City of New York, 71 NY2d 912, 914 [1988]). To permit HHM to seek apportionment pursuant CPLR 1601 *534 under the facts of this case would introduce confusion as to the basis of the City’s liability to plaintiff and obviate the intent of the Pothole Law to insulate the municipality from liability where no prior written notice of the alleged defect has been received (General Municipal Law § 50-e [4]; Amabile, 93 NY2d at 476).
The verdict was not against the weight of the evidence (see McDermott v Coffee Beanery, Ltd., 9 AD3d 195, 206 [1st Dept 2004]). As noted, the jury’s determination that there was a dangerous defect in the road resulting from HHM’s construction activity has a rational basis in the record. It was within the jury’s province to find that plaintiffs release of air from her inflatable seat cushion so as to better reach the pedals was not a proximate cause of her injuries, given the testimony of her safety officer that even with a fully inflated cushion, the driver of a bus going over a deep road defect would be jolted. Although plaintiffs collective bargaining agreement was not in evidence, her economist’s valuation of her lost future benefits was properly based on that agreement (see Hambsch v New York City Tr. Auth., 63 NY2d 723, 725-726 [1984]; Tassone v Mid-Valley Oil Co., 5 AD3d 931, 933 [3d Dept 2004], lv denied 3 NY3d 608 [2004]). Indeed, HHM’s vocational expert partially based his own valuation on the agreement. Further, because we conclude that HHM was under a duty of care, HHM was not prejudiced by opposing counsel’s reading of a contract provision placing responsibility for injury on HHM.
Accordingly, the judgment should be affirmed.

 The requested instruction states, in substance, that the City owes a nondelegable duty to the public to maintain its streets and to take reasonable precautions to ensure their safety. It directs the jury to assess reasonableness on the basis of whether the City should have anticipated plaintiffs presence at the location where she sustained injury and whether the City had knowledge of the hazard for a sufficient time to have enabled it to remedy the condition.